# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Northern Division

MICHAEL LAVIN

    Plaintiff,

*vs.*                               Case No.: _____

SYNERGY MARINE PTE LTD, GLORY
SATURN, LTD., SDTR MARINE PTE, LTD.,
GREAT NAVIGATOR 08 CO., LTD., and
M/V SDTR DORIS (IMO 9877860) *in rem*,

    Defendants.

_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

COMES NOW, Captain Michael Lavin ("Capt. Lavin" or "Plaintiff"), by his undersigned attorneys, and files this complaint against *in personam* Defendants Synergy Marine PTE LTD, Glory Saturn, Ltd., SDTR Marine PTE, Ltd., and Great Navigator 08 Co., Ltd., and against *in rem* Defendant M/V SDTR DORIS (IMO 9877860). Capt. Lavin would respectfully show the Court as follows:

### I.
### Jurisdiction & Venue

1.     This District Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 28

U.S.C. § 1333 (as against the Vessel *in rem* only), as well as 28 U.S.C. § 1331 (46 U.S.C. § 30104) *in the alternative*. Venue is proper in this district as Defendants have availed themselves of this district by directing its vessels to the ports of Maryland for purposes of generating profit, and the injuries to Plaintiff occurred while on board M/V SDTR DORIS in Maryland. The Parties are diverse and the amount in controversy exceeds the jurisdictional limits.

## II.
## Parties

2.   Plaintiff Capt. Michael Lavin is an individual Citizen of the State of Maryland who currently resides within the district.

3.   *In Personam* Defendant Glory Saturn, Ltd., was/is a foreign company which regularly engages in business in the State of Maryland and maintains its headquarters in Singapore. Glory Saturn, Ltd. owned and/or operated M/V SDTR DORIS.

4.   *In Personam* Defendant SDTR Marine PTE, Ltd., was/is a foreign company which regularly engages in business in the State of Maryland and maintains its headquarters in Singapore. SDTR Marine PTE, Ltd. owned and/or operated M/V SDTR DORIS.

5.   *In Personam* Defendant Synergy Marine PTE LTD, was/is a foreign company which regularly engages in business in the State of Maryland and maintains its

*Michael Lavin v. Synergy Marine PTE LTD., et al*

headquarters in Singapore. Synergy Marine PTE LTD owned and/or operated M/V SDTR DORIS.

a. Synergy Marine PTE LTD has recently been charged by the United States with systemic safety, maintenance, and reporting failures across its fleet, including concealment of equipment defects, failure to properly train crew, and falsifying records during investigations after another Synergy vessel, M/V DALI, struck the Key Bridge in Maryland. These allegations reflect fleet-wide practices directly relevant to the unsafe condition of the pilot ladder arrangement aboard the M/V SDTR DORIS, including failures in inspection, maintenance, and safety compliance. The underlying incident also demonstrates that Synergy regularly conducts business in Maryland.

6. *In Personam* Defendant Great Navigator 08 Co., Ltd. was/is a foreign company which regularly engages in business in the State of Maryland and maintains its headquarters outside the United States. Great Navigator 08 Co., Ltd. owned and/or operated M/V SDTR DORIS.

7. *In rem* Defendant SDTR DORIS (IMO 9877860) (subsequently renamed M/V LIME MIA) may be found wherever she is afloat and will, upon information and belief, come within the district during the pendency of this case. The owners and operators of the SDTR DORIS*, the in personam* Defendants, have appeared on behalf of the Vessel.

## III.
## Background Facts

### A.    Captain Michael Lavin – Maryland Pilot

8.    Capt. Lavin is a Senior Pilot with the Association of Maryland Pilots. He is licensed by the United States Coast Guard and holds a commission from the State of Maryland to conduct compulsory pilotage to vessels calling in Maryland ports.

9.    Capt. Lavin has maintained his pilotage credentials in Maryland for approximately 18 years.

10.    At all relevant times, Plaintiff was engaged in his work as a compulsory pilot, providing essential navigational services required for vessels transiting Maryland waters.

### B.    M/V SDTR DORIS

11.    M/V SDTR DORIS (IMO 9877860), was a seagoing bulk carrier vessel, 227.2 meters in length and flying the flag of the Marshall Islands.

### C.    The Ladder Railing Collapse

12.    As a pilot, Plaintiff's role required him to board vessels at sea from pilot boats, often under nighttime conditions, and safely assume navigational command. This boarding evolution depends entirely on the vessel providing a safe and properly rigged pilot ladder and accommodation ladder system.

13.    Pilots such as Mr. Lavin are not traditional crew members, but they are

*Michael Lavin v. Synergy Marine PTE LTD., et al*

indispensable to the vessel's mission and are exposed to uniquely dangerous boarding conditions controlled entirely by the vessel and its crew.

14. On February 14, 2024, in the early morning hours, Plaintiff was assigned to board the M/V SDTR DORIS while it lay at anchorage near Annapolis, Maryland.

15. At approximately 01:37 local time, Plaintiff's pilot boat notified the Vessel that boarding would occur in approximately fifteen minutes and received confirmation that the ladder arrangement would be properly rigged.

16. At approximately 01:53, Plaintiff arrived alongside the Vessel via pilot boat, confirmed that the crew was waiting at the top of ladder, received the "go ahead" from the ship's crew, and began climbing the Vessel's combination pilot ladder (which consisted of a pilot ladder and an accommodation ladder/gangway).

17. While ascending, Plaintiff grasped the outboard collapsible safety railing of the accommodation ladder/gangway—an essential safety feature designed to prevent precisely the type of fall that occurred. Suddenly and without warning, the entire outboard hand railing collapsed into the closed position, causing all stanchions and the handrail to drop simultaneously.

18. The sudden collapse caused Plaintiff to lose balance and initiate an uncontrolled fall outward from the Vessel, placing him at immediate risk of falling into the frigid water or onto the pilot boat below—either of which posed a high likelihood of fatal injury. In a reflexive effort to save his life, Plaintiff wrapped his right arm around

5

*Michael Lavin v. Synergy Marine PTE LTD., et al*

the inboard railing, arresting his fall and pulling himself back toward the Vessel. The force of Plaintiff's body weight and the kinetic force of the fall transferred violently into his right arm and shoulder.

19. Plaintiff completed the boarding using only the inboard rail, despite immediate pain and functional limitation.

20. The collapse occurred because a cotter pin or equivalent securing mechanism was not properly installed to secure the outboard hand railing (see images below), causing the railing to fail as a unit when used by the Plaintiff during his climb.



*Michael Lavin v. Synergy Marine PTE LTD., et al*

21. Shortly after arriving on the Vessel's bridge, Plaintiff reported to the crew and Master that the pilot ladder arrangement was improperly rigged and that he had nearly fallen overboard. He explained that the Vessel had received advance notice of the boarding and failed to ensure that the ladder system was properly secured and inspected prior to Plaintiff's arrival.  The audio of this conversation was captured in real time by the Vessel's Voyage Data Recorder.

22.  As a direct result of the incident, Plaintiff suffered traumatic injuries to his right shoulder and arm.  Contemporaneous medical evaluation revealed, *inter alia*, bilateral shoulder rotator cuff syndrome, labral injury, right elbow traumatic tendon injury, high-grade to full-thickness rotator cuff tear, and rupture of the long head of the bicep tendon.

23. Plaintiff underwent rotator cuff surgical repair and extensive surgical debridement on April 4, 2024. He remained immobilized in a sling for weeks and underwent lengthy physical therapy.  He was unable to work from February 14, 2024, until October 12, 2024.  Treatment continued to date.

24. Despite treatment, Plaintiff has a permanent visible deformity due to the unrepaired biceps rupture and continues to suffer residual impairment in his right arm and shoulder.

25. Capt. Lavin is seeking damages as a result of the negligence and unseaworthiness of Defendants and M/V SDTR DORIS.

*Michael Lavin v. Synergy Marine PTE LTD., et al*

## IV.
## Claims:

### A. Negligence / Negligence *Per Se*:

26. Capt. Lavin incorporates paragraphs 1-25 as if fully set forth herein.

27. On February 14, 2024, Defendants, as the owners/operators of M/V SDTR DORIS, were responsible for providing a safe means of ingress and egress to Capt. Lavin and owed the duty of reasonable care under the circumstances.

    a.    SOLAS Chapter V, Regulation 23, imposes a mandatory obligation on vessels to provide safe means of embarkation and disembarkation for pilots.

    b.    IMO Resolution A.1045(27) establishes international safety standards for pilot transfer arrangements, including specifications for securing, strength, and construction to ensure safe embarkation and disembarkation.

28. Defendants, by and through their crewmembers, agents, servants, officers, staff and/or employees, who were acting in the course and scope of their employment and/or agency, undertook a dangerous and hazardous condition on the pilot ladder arrangement.

29. Defendants breached their duties to Plaintiff by:

    A.    Failing to properly rig and secure the accommodation ladder railing;

8

*Michael Lavin v. Synergy Marine PTE LTD., et al*

B.      Allowing a critical safety system to remain unsecured;

C.      Failing to comply with basic maritime safety standards governing pilot boarding;

D.      Failing to ensure that Vessel crewmembers were properly trained and competent to operate the pilot ladder;

E.      Failing to implement, enforce, or follow policies and procedures necessary to prevent injury to pilots using the pilot ladder for ingress/egress;

F.      Causing, allowing, and permitting the Vessel's accommodation ladder and associated safety railing system to be in a dangerous, defective, and hazardous condition, such that it collapsed during ordinary use;

G.      Failing to properly secure, fasten, and maintain the outboard collapsible railing, including failure to ensure that critical securing components—such as the cotter pin mechanism—were properly installed and functioning;

H.      Permitting the accommodation ladder system to remain in a condition where complete structural failure could occur upon normal loading, including collapse of all stanchions simultaneously;

I.      Failing to properly prepare the Vessel for pilot boarding, despite receiving advance notice that a pilot would arrive within approximately

*Michael Lavin v. Synergy Marine PTE LTD., et al*

fifteen minutes;

J.   Failing to inspect and verify the integrity of the pilot ladder and accommodation ladder arrangement prior to Plaintiff's boarding, in accordance with accepted maritime practice;

K.   Failing to implement and enforce proper procedures for the rigging, securing, and inspection of pilot boarding equipment, such that unsafe conditions were permitted to exist;

L.   Failing to provide adequate, properly trained, and competent crew members capable of safely preparing and verifying boarding arrangements for pilots;

M.   Failing to adequately supervise crew members responsible for preparing the boarding arrangement, including failure by the Master and officers to ensure that the Vessel was properly prepared;

N.   Failing to ensure that essential safety equipment was operational and reliable prior to use, particularly equipment designed to prevent falls during pilot transfer;

O.   Permitting Plaintiff to board the Vessel at night while relying on a defective and unverified boarding apparatus, thereby exposing him to unreasonable risk;

P.   Failing to warn Plaintiff that the outboard railing was unsecured or

*Michael Lavin v. Synergy Marine PTE LTD., et al*

unsafe, despite the crew's responsibility for the condition of the boarding equipment;

Q.    Failing to adopt and enforce a culture of safety aboard the Vessel, including prioritizing proper preparation of boarding arrangements over operational expediency;

R.    Failing to provide proper gear, equipment, and appurtenances, and to inspect and maintain the same in proper working order, including the pilot ladder and associated railing systems;

S.    Operating the Vessel in such a manner as to unreasonably endanger the safety of individuals required to board, including compulsory pilots;

T.    Failing to promulgate and enforce proper and safe rules of seamanship governing pilot boarding operations, including inspection, verification, and readiness of boarding equipment;

U.    Allowing unsafe conditions in a critical access system to exist for a sufficient length of time that they were known or should have been known to the Vessel and its crew, and not correcting those conditions;

V.    Requiring Plaintiff to perform his duties in the presence of hazards created and controlled solely by the Vessel and its crew, including defective boarding equipment;

W.    Failing to take reasonable steps to prevent a foreseeable catastrophic

11

failure of safety equipment during an inherently dangerous operation, namely pilot boarding;

X.    Failing to warn Plaintiff of the unsafe condition; and

Y.    Engaging in other acts and omissions to be discovered.

30. Defendants' violations of applicable statutes and regulations constitute negligence *per se*, creating a presumption of causation under General Maritime Law.

31. The failure to properly rig and secure the pilot ladder system constitutes a violation of safety rules designed to prevent precisely this type of accident. Accordingly, Defendants bear the burden of proving that their violations could not have caused the incident. *See The Pennsylvania*, 86 U.S. 125 (1873).

32. As a direct and proximate result of Defendants' negligence, negligence *per se*, and breach of the foregoing legal duties, Plaintiff suffered severe bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, loss of earnings, loss of ability to earn money, and medical expenses.  These losses and injuries are either permanent or continuing and Plaintiff will suffer these losses and injuries in the future.

**B.    Unseaworthiness-*Sieracki* Seaman:**

33. Capt. Lavin incorporates paragraphs 1-32 as if fully set forth herein.

*Michael Lavin v. Synergy Marine PTE LTD., et al*

34. At the time of Capt. Lavin's injury, he was aboard M/V SDTR DORIS to perform pilotage services and to conn the Vessel to its berth (also in Maryland).

35. Pilotage is a traditional maritime activity that is critical to the safe navigation of ocean-going ships and requires the localized knowledge of a duly licensed pilot to safely conn vessels past the shoals, reefs and other submerged hazards along the shipping channels.

36. Compulsory pilots, such as Capt. Lavin, are not traditional members of the crew of the vessel but assist in the mission and safe navigation of the vessel and are considered to be the equivalent of the captain while on board the vessel.

37. Due to the relationship of Capt. Lavin to SDTR DORIS, the Vessel (and its owners) owed to him the duty of a seaworthy ship under the doctrine of seaworthiness. *See Seas Shipping Co., Inc. v. Sieracki*, 328 U.S. 85 (1946). Plaintiff is not covered by the Jones Act (and did not receive maintenance & cure benefits) and is not covered by the LHWCA (and did not receive LHWCA benefits), and therefore falls within the class of maritime workers for whom general maritime remedies—including Sieracki unseaworthiness—remain available. *Rivera v. Kirby Offshore Marine, L.L.C.*, 983 F.3d 811 (5th Cir. 2020).

    a.    Plaintiff was not a covered "employee" engaged in longshore, ship repair, shipbuilding, or harbor employment under the LHWCA, but was instead engaged in compulsory pilotage, a distinct navigational function not

13

encompassed by that statute. Accordingly, no statutory remedy displaces Plaintiff's entitlement to traditional maritime remedies under general maritime law.

38. M/V SDTR DORIS was unseaworthy as that term is understood at law because the accommodation ladder and railing system were improperly assembled, unsecured, improperly inspected, and unsafe for their intended use. The duty to provide a seaworthy vessel is absolute and not conditioned on notice or negligence, and applies even to transitory unsafe conditions. *See Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539 (1960). The M/V SDTR DORIS was not reasonably fit for its intended purpose and was additionally unseaworthy in the following respects:

A.   Providing an accommodation ladder system with a defective and inadequately secured outboard railing, rendering the boarding apparatus unsafe for its intended use;

B.   Equipping the Vessel with a railing system dependent on a single unsecured or improperly installed retaining mechanism, such that failure of that component resulted in total system failure;

C.   Allowing a latent defect to exist within a primary safety system, which only manifested upon catastrophic failure during use;

D.   Supplying a crew that was not reasonably fit or competent to safely prepare and rig essential boarding equipment, including the

*Michael Lavin v. Synergy Marine PTE LTD., et al*

accommodation ladder system;

E.     Providing a crew insufficiently trained or competent in the proper securing and verification of pilot boarding arrangements; and

F.     Any and all other conditions of unseaworthiness identified in discovery.

39. As a direct and proximate result of the Vessel's unseaworthiness and Defendants' breach of the foregoing legal duties, Plaintiff suffered severe bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, loss of earnings, loss of ability to earn money, and medical expenses.  These losses and injuries are either permanent or continuing and Plaintiff will suffer these losses and injuries in the future.

### C. *In the Alternative*, Section 905(b) Claim under the Longshore and Harbor Worker's Compensation Act.

40.  Plaintiff incorporates paragraphs 1-39 as if fully set forth herein.

41.  In the alternative, should the evidence show that Plaintiff is covered by the Longshoreman under the Longshore and Harbor Workers' Compensation Act, Plaintiff makes this claim under 33 U.S.C. § 905(b) against Defendants as the owner/operator of M/V SDTR DORIS.

42. At the time of Plaintiff's injury, the entire vessel was under the active control of Defendants and had not been turned over.

*Michael Lavin v. Synergy Marine PTE LTD., et al*

43. Plaintiff was lawfully aboard the Vessel to provide navigation assistance.

44. As set forth above, Plaintiff was injured when the Vessel's pilot ladder was improperly rigged by the Vessel's crew and the pilot ladder railing collapsed under normal use.

45. Defendants owed duties under 33 U.S.C. § 905(b) to provide a reasonably safe vessel and to warn of latent hazards.

46. Defendants breached those duties by failing to ensure that the boarding arrangement was safe and properly secured.

47. Defendants were further negligent under § 905(b) in, among other things:

A.   Failing to provide a pilot ladder/accommodation ladder arrangement that was reasonably fit for its intended purpose, including a railing system that collapsed under ordinary use;

B.   Failing to ensure that the outboard collapsible railing was properly secured and operational at the time the vessel invited the pilot to board, despite prior notice of arrival;

C.   Failing to warn Plaintiff of latent hazards in the boarding arrangement, including that the outboard railing was unsecured and would collapse upon use;

D.   Presenting a defective and unsafe means of ingress that was not open and obvious to a boarding pilot, particularly under nighttime conditions;

16

E.    Failing to provide a boarding arrangement free from hidden dangers known to the Vessel or that should have been known in the exercise of reasonable care;

F.    Retaining active control over the pilot boarding operation, including the rigging and condition of the accommodation ladder system, while allowing unsafe conditions to persist;

G.    Failing to exercise reasonable care in areas of the Vessel under the crew's active control, including the preparation and maintenance of pilot boarding equipment;

H.    Permitting Plaintiff to board the Vessel using equipment under the Vessel's control that was not properly secured, inspected, or verified as safe for use;

I.    Failing to take reasonable steps to ensure the safety of the boarding arrangement while it remained under the crew's control, including immediately prior to boarding;

J.    Failing to intervene to correct an unsafe boarding condition despite knowledge, or constructive knowledge, that the accommodation ladder and railing system were not properly secured;

K.    Failing to stop or delay the pilot boarding operation despite the Vessel's inability to provide a safe boarding arrangement;

*Michael Lavin v. Synergy Marine PTE LTD., et al*

L.    Failing to take corrective action after being placed on notice that the Vessel was not properly prepared for pilot transfer, including failure to suspend boarding until the condition was remedied;

M.    Failing to exercise reasonable care under the circumstances to provide a safe means of ingress to the Vessel;

N.    Allowing a dangerous condition to exist in a primary access system that was intended to protect against falls during pilot transfer;

O.    Permitting the use of defective equipment in a critical safety function, namely the safe boarding of a compulsory pilot;

P.    Allowing unsafe conditions to exist for a sufficient period of time that the Vessel knew or should have known of them and failed to correct them;

Q.    Failing to comply with industry standards governing pilot ladder and accommodation ladder arrangements as incorporated into the Vessel's obligations under General Maritime Law;

R.    Permitting Plaintiff to rely upon the Vessel's implicit representation that the boarding arrangement had been properly rigged and was safe for use;

S.    Engaging in such other acts or omissions constituting negligence under § 905(b) to be discovered through investigation and discovery.

48. The danger posed by the unsecured railing was not open or obvious to

*Michael Lavin v. Synergy Marine PTE LTD., et al*

Plaintiff while boarding at night and relying on the Vessel's representation that it was prepared for pilot transfer.

49. Defendants' violations of applicable statutes and regulations constitute negligence *per se*, creating a presumption of causation under General Maritime Law.

50. The failure to properly rig and secure the pilot ladder system constitutes a violation of safety rules designed to prevent precisely this type of accident. Accordingly, Defendants bear the burden of proving that their violations could not have caused the incident. *See The Pennsylvania*, 86 U.S. 125 (1873).

51. As a direct and proximate result of Defendants' negligence, negligence *per se*, and breach of the foregoing legal duties, Plaintiff suffered severe bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, loss of earnings, loss of ability to earn money, and medical expenses. These losses and injuries are either permanent or continuing and Plaintiff will suffer these losses and injuries in the future.

### D. *In the Alternative*, Jones Act Negligence / Unseaworthiness / Maintenance & Cure

52. Plaintiff incorporates Paragraphs 1-51 as if fully set forth herein.

53. This cause of action is in the alternative. Capt. Lavin was aboard M/V SDTR DORIS for the sole task of navigating her in the waters of Maryland to her berth

*Michael Lavin v. Synergy Marine PTE LTD., et al*

(also in Maryland). He was not aboard the Vessel to assist in loading, unloading or ship repair.

54. Capt. Lavin was, at the time he was aboard the Vessel, a seaman in the truest sense in that, the Vessel could not have legally completed its mission without him (or another licensed pilot aboard) and Capt. Lavin was the individual actually navigating the Vessel during the subject voyage.

55. At all relevant times, Plaintiff was permanently or substantially connected to a vessel in navigation, contributed to the function and mission of that vessel, and was exposed to the perils of the sea, such that he qualified as a Jones Act seaman within the meaning of 46 U.S.C. § 30104, should the evidence so establish.

56. Under the Jones Act, Defendants were negligent in, among other things:

A. Failing to provide Plaintiff with a reasonably safe place to work, including a safe and properly rigged means of boarding the Vessel from a pilot boat;

B. Causing, allowing, and permitting the Vessel's accommodation ladder and associated safety railing system to be in a dangerous, defective, and hazardous condition, such that it collapsed during ordinary use;

C. Failing to properly secure, fasten, and maintain the outboard collapsible railing, including failure to ensure that critical securing components— such as the cotter pin mechanism—were properly installed and

*Michael Lavin v. Synergy Marine PTE LTD., et al*

functioning;

D.  Permitting the accommodation ladder system to remain in a condition where complete structural failure could occur upon normal loading, including collapse of all stanchions simultaneously;

E.  Failing to properly prepare the Vessel for pilot boarding, despite receiving advance notice that a pilot would arrive within approximately fifteen minutes;

F.  Failing to inspect and verify the integrity of the pilot ladder and accommodation ladder arrangement prior to Plaintiff's boarding, in accordance with accepted maritime practice;

G.  Failing to implement and enforce proper procedures for the rigging, securing, and inspection of pilot boarding equipment, such that unsafe conditions were permitted to exist;

H.  Failing to provide adequate, properly trained, and competent crew members capable of safely preparing and verifying boarding arrangements for pilots;

I.  Failing to adequately supervise crew members responsible for preparing the boarding arrangement, including failure by the Master and officers to ensure that the Vessel was properly prepared;

J.  Failing to ensure that essential safety equipment was operational and

21

reliable prior to use, particularly equipment designed to prevent falls during pilot transfer;

K.   Permitting Plaintiff to board the Vessel at night while relying on a defective and unverified boarding apparatus, thereby exposing him to unreasonable risk;

L.   Failing to warn Plaintiff that the outboard railing was unsecured or unsafe, despite the crew's responsibility for the condition of the boarding equipment;

M.   Failing to adopt and enforce a culture of safety aboard the Vessel, including prioritizing proper preparation of boarding arrangements over operational expediency;

N.   Failing to provide proper gear, equipment, and appurtenances, and to inspect and maintain the same in proper working order, including the pilot ladder and associated railing systems;

O.   Operating the Vessel in such a manner as to unreasonably endanger the safety of individuals required to board, including compulsory pilots;

P.   Failing to promulgate and enforce proper and safe rules of seamanship governing pilot boarding operations, including inspection, verification, and readiness of boarding equipment;

Q.   Allowing unsafe conditions in a critical access system to exist for a

*Michael Lavin v. Synergy Marine PTE LTD., et al*

sufficient length of time that they were known or should have been known to the Vessel and its crew, and not correcting those conditions;

R.    Requiring Plaintiff to perform his duties in the presence of hazards created and controlled solely by the Vessel and its crew, including defective boarding equipment;

S.    Failing to take reasonable steps to prevent a foreseeable catastrophic failure of safety equipment during an inherently dangerous operation, namely pilot boarding;

T.    Any and all other acts or omissions constituting negligence to be discovered through investigation and discovery.

57. Defendants' violations of applicable statutes and regulations constitute negligence *per se*, creating a presumption of causation under General Maritime Law.

58. The failure to properly rig and secure the pilot ladder system constitutes a violation of safety rules designed to prevent precisely this type of accident. Accordingly, Defendants bear the burden of proving that their violations could not have caused the incident. *See The Pennsylvania*, 86 U.S. 125 (1873).

59. As a direct and proximate result of Defendants' negligence, negligence *per se*, and breach of the foregoing legal duties, Plaintiff suffered severe bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, loss of earnings, loss of ability to earn money, and medical

*Michael Lavin v. Synergy Marine PTE LTD., et al*

expenses.  These losses and injuries are either permanent or continuing and Plaintiff will suffer these losses and injuries in the future.

60.  Also in the alternative, should the evidence establish that Plaintiff is a Jones Act Seaman, he further asserts a seaman's claim for Unseaworthiness under General Maritime Law and incorporates, repeats and realleges the supporting allegations from Section B herein.

61.  Also in the alternative, should the evidence establish that Plaintiff is a Jones Act Seaman, he further asserts a seaman's claim for Maintenance & Cure under General Maritime Law.

**WHEREFORE,** Plaintiff prays judgment against Defendants as follows:

a.  General damages according to proof;

b.  All expenses for health care providers, past and future, according to proof;

c.  Loss of income, past and future, according to proof;

d.  Maintenance, cure and unearned wages according to proof;

e.  Reasonable attorneys' fees according to General Maritime Law;

f.  Plaintiff's costs and disbursements incurred herein;

g.  Prejudgment and post-judgment interest according to General Maritime Law; and

h.  For such other and further relief as this District Court deems just and fair.

*Michael Lavin v. Synergy Marine PTE LTD., et al*

DATED THIS 21ˢᵗ day of May, 2026.

Respectfully submitted,

>     /s/                
> Robert M. Schwartzman, Esq.
> CPF# 8011010339
> Schwartzman Law, LLC
> 2313 Hidden Glen Drive
> Owings Mills, MD 21117
> Phone: 410-852-7367
> *rms@rs-atty.com*
>
> and
>
> Adam E. Deitz, Esq.
> *pro hac vice pending*
> Mariner Law, PLLC
> 406 S. 1ˢᵗ Street #300
> Mount Vernon, WA 98273
> (360) 399-2788
> adam@marinerlaw.com
>
> Counsel for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable in this cause.

>     /s/                
> Robert M. Schwartzman, Esq.